UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANNIESA L. PARIS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:11-CV-3119 |
| | § | |
| SANDERSON FARMS, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

### I.     INTRODUCTION

Pending before the Court is the defendants', Sanderson Farms, Inc., *et al*, ("Sanderson Farms"), motion for summary judgment (Docket No. 32), the plaintiff's, Anniesa L. Paris ("the plaintiff"), response (Docket No. 34), Sanderson Farms' reply (Docket No. 36), and the plaintiff's sur-response (Docket No. 37).  Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby GRANTS Sanderson Farms' motion for summary judgment.

### II.     FACTUAL BACKGROUND

The plaintiff began working for Sanderson Farms in the Waco processing plant in January of 2008, as a personnel clerk.  She was promoted to Employee Records Clerk in June of 2008.  On October 19, 2009, she took leave pursuant to the Family and Medical Leave Act ("FMLA") for a laparoscopy procedure and returned to work on November 16, 2009.  The plaintiff claims that while she was on leave, her supervisor, Richard Warner, harassed her by telling her that she was not following company guidelines requiring her to submit a timely doctor's note to excuse her absence.  The plaintiff acknowledges that Warner had only been

hired a "couple of weeks" prior to her taking leave and she was more familiar with the company's procedures than Warner.  She also acknowledges that once she submitted the required FMLA certification, Warner "backed off."

When the plaintiff returned to work, Warner issued her two write-ups for excessive lateness and the unauthorized release of information from personnel files.  The plaintiff told Warner that the write-ups were "bogus" and refused to sign them.  She also complained to Division Manager Todd Ormon and requested that the write-ups be removed from her file.  After speaking with Warner, Ormon determined that the write-ups were unjustified and rescinded them.  Then, in December of 2009, Warner was terminated for poor job performance, including the issuance of the improper write-ups to the plaintiff.

On December 17, 2009, the plaintiff began a second period of FMLA leave after receiving treatment at the emergency room for vomiting, diarrhea, and abdominal cramping and pain.  The plaintiff's physician, Dr. Salinas, submitted a completed FMLA certification on December 30, 2009, stating that the plaintiff would be out of work for two to three weeks while the doctor attempted to diagnose her condition.[1]

On January 8, 2010, Ormon called the plaintiff to inquire whether she was going to get better and when she was returning to work.  Ormon also informed the plaintiff that she would be sent additional FMLA paperwork to be completed by her doctor.  The plaintiff told Ormon she did not know when she was returning to work and she would have her doctor complete the

---

[1]The plaintiff claims that the "real problems" for her started on December 4, 2009, when the lawyer for Revena Carroll, a former co-worker who had been terminated, sent a letter to Sanderson Farms asserting claims under the FMLA and identifying the plaintiff as a witness to Todd Ormon's alleged discriminatory conduct toward Carroll. According to the plaintiff, in August of 2009, when Ormon received documentation for an extension of Carroll's FMLA leave, he angrily threw the papers at the plaintiff and said, "I don't need this.  I'll take care of it myself." The plaintiff claims that she called Carroll and said that Ormon was "pissed."  Therefore, the plaintiff claims that Sanderson Farms retaliated against her because she witnessed Ormon's discriminatory conduct and/or because the company learned that she might be a witness in Carroll's case against Sanderson Farms.

FMLA paperwork as soon as she received it.  On January 22, 2010, the plaintiff submitted an FMLA certification signed by Dr. Salinas, indicating a return date of January 25, 2010.

On January 25, 2010, the plaintiff did not return to work, but submitted a note from Dr. Salinas indicating that she needed to remain out of work until she was released by a gastroenterologist.  That same day, Veronica Campbell, the Field Employee Relations Manager at Sanderson Farms, sent a letter to the plaintiff requesting an updated FMLA certification to cover any additional leave beyond January 25.  On January 27, 2010, Dr. Salinas submitted an updated FMLA certification stating that the plaintiff could not return to work until after she saw a gastroenterologist on March 18, 2010.

The plaintiff's FMLA leave expired on or about February 18, 2010.[2]  On February 22, Dr. Salinas submitted a note stating that the plaintiff was still off work because she was waiting to see the gastroenterologist on March 18, 2010.  Since the plaintiff's leave had expired, on February 26, 2010, Ormon requested a discretionary extension of the plaintiff's leave through March 18.  The extension, which was beyond the thirteen weeks permitted by Sanderson Farms' policy, was approved by the company's Executive Committee and allowed the plaintiff to remain on leave and continue to collect her salary through March 18.

The plaintiff saw the gastroenterologist on March 18, 2010, and claims that she was directed to undergo a series of tests on April.  On March 23, 2010, Dr. Salinas sent Sanderson

---

[2]Sanderson Farms notes that pursuant to its FMLA policy ("the policy"), leave is calculated in accordance with C.F.R. § 825.200(b)(3) and, as such, an employee is eligible for 12 weeks of statutory leave and 13 weeks under the company's own policy.  Thus, the plaintiff's 12 weeks of statutory leave expired on February 11, 2010, and her additional one week of leave under company policy expired on February 18, 2010.  Sanderson Farms also notes that its FMLA policy is more generous than required by law.  For instance, company policy affords leave rights to employees only after 90 days of employment, rather than after 12 months as prescribed by law and, as noted, the policy allows 13 weeks of leave, rather than the 12 weeks provided by law.  The plaintiff does not dispute Sanderson Farms' representations, but asserts that while the company's policy is generous, it was not created by Ormon and when employees like the plaintiff exercise their rights under the policy, it "potentially" costs Ormon money through a diminished bonus.

Farms a note, stating that the plaintiff was excused from work until the gastroenterologist gave an indication that she could return.   The plaintiff claims that she subsequently spoke with Campbell who acknowledged that she had received Dr. Salinas' update, but Campbell told the plaintiff she would need to complete an additional FMLA certification.[3]   Campbell sent the plaintiff a certified letter on March 25, 2010, advising that her FMLA leave had expired on March 18 and that Dr. Salinas' note from March 23 was not an acceptable documentation.   The letter further advised the plaintiff that, "if you have not returned to work or submitted a request for additional leave and provided the required Certification completed by the Gastroenterologist by April 10, 2010, we will assume that you have decided to relinquish your employment" and your "employment will be terminated."   Campbell also enclosed the required certification forms with the letter, which the plaintiff acknowledges she received on March 30, 2010.

The plaintiff claims that on April 2, 2010, she called Campbell and left a message indicating that she had tests scheduled with the gastroenterologist on April 5 and would not be able to return to work until the results came back and the gastroenterologist cleared her for work. The plaintiff claims that Campbell did not return her call.  She asserts that on April 8, 2010, she called Campbell and left a message advising that the gastroenterologist was out of the country until April 15 and had not seen the results of the April 5, tests, and, therefore, the plaintiff could not return to work until the gastroenterologist released her.

On April 9, 2010, Dr. Salinas faxed a medical certification form to Campbell at 3:15 p.m., stating that the plaintiff's expected date of return to work was "today, 4/09/10."   The

---

[3]Sanderson Farms notes that its policy requires employees to submit completed certification forms containing sufficient information to enable the company to determine whether requested leave qualifies as FMLA leave and re-certifications also may be required as permitted by law.  Sanderson Farms may notify an employee if a certification is incomplete, vague, ambiguous, non-responsive or not on company-provided forms, and the employee must cure any defects.  The policy explicitly states that employees who fail to return to work after exhausting their 13 weeks of leave will be subject to termination.  The plaintiff does not dispute Sanderson Farms' representations.

plaintiff claims that Dr. Salinas sent the document without her knowledge and that she was not informed by Dr. Salinas or the gastroenterologist that she had been cleared to return to work. She asserts that the release to return to work on April 9 was odd because it came from Dr. Salinas rather than the gastroenterologist; it was not supposed to come until after the gastroenterologist had returned to the office on April 15; it came at 3:15 p.m., on the same day that she was released to return to work; and the release came from a doctor instead of being personally presented by the plaintiff.   The plaintiff also contends that despite her calls to Campbell on April 2 and 8, 2010, and the unusual circumstances surrounding the fax from Dr. Salinas, Campbell did not attempt to communicate with her at any time between receiving the fax and her termination.

The plaintiff did not return to work on Friday, April 9, or on Monday, April 12, 2010. On Tuesday, April 13, 2010, the plaintiff was terminated for failing to return from FMLA leave or request additional leave.[4] A Sanderson Farms "Salaried Payroll Authorization" form signed by Ormon and Campbell on April 13, 2010, indicates that the plaintiff's effective date of termination was April 9, 2010, the date her doctor released her to return to work.  The plaintiff claims, however, that she was actually terminated on April 1, 2010, because: during a telephone conversation on April 15, Campbell told her that she had been terminated on April 1; the document recording her termination originally indicated that she was terminated on April 1, but it was altered to indicate an effective date of April 9; and in a Consolidated Omnibus

---

[4] At his deposition, Ormon testified that although he was involved in the decision to terminate the plaintiff, he did not make the final decision.  Rather, the ultimate decision to terminate was made by Jennifer Buster, the Human Resources Manager.  When asked whose decision it was, "yours or [Ormon's] or somebody else's?" Buster responded that the "policy dictated" termination because the plaintiff failed to comply with the company policy requiring certification from her doctor to be out on FMLA leave. Veronica Campbell has stated that she was only involved in handling the paperwork regarding the plaintiff's termination, but was not involved in the actual decision to terminate.

Reconciliation Act (COBRA) form provided to the plaintiff on April 13, 2010, the qualifying event listed is "End of employment," and the date given is "4/01/10."[5]

The plaintiff filed the instant suit, alleging that Sanderson Farms interfered with her rights under the FMLA and discriminated and retaliated against her by terminating her in violation of the FMLA, the Americans with Disabilities Act ("ADA"), and the Texas Commission on Human Rights Act ("TCHRA").

## III.   CONTENTIONS OF THE PARTIES

### A.   Sanderson Farms' Contentions

Sanderson Farms argues that it did not interfere with the plaintiff's rights to obtain leave because she received all the leave to which she was entitled under the FMLA, and the company's requests for documentation and certifications do not constitute harassment and interference, but were proper requests for information under the law and company policy.

Sanderson Farms also contends that, even assuming the plaintiff can establish a *prima facie* case of discrimination and retaliation, summary judgment is still proper because the company has proffered a legitimate, non-discriminatory reason for the plaintiff's termination,

---

[5]However, Jennifer Buster, the Human Resources Manager, and Todd Ormon, both involved in the decision to terminate the plaintiff, deny that they ever instructed anyone to alter the date of the plaintiff's termination from April 1 to April 9, 2010. According to Sanderson Farms, after Campbell received the fax from Dr. Salinas on April 9, clearing the plaintiff to return to work, Campbell forwarded the fax to Buster, and Buster decided to wait and see if they heard from the plaintiff on Monday, April 12, 2010. The plaintiff, however, did not return to work on April 12. At that point, Buster believed that termination of the plaintiff's employment was mandated by the FMLA policy because she failed to request additional extension of her leave with appropriate certification. Buster, who made the ultimate decision to terminate the plaintiff, maintains that the decision was not made until April 13, 2010, but it was made to be effective on April 9 because that is the date that the plaintiff's doctor released her to return to work.

With respect to the COBRA form indicating that medical coverage was going to end on April 1, 2010, due to end of employment, Veronica Campbell explained that the form merely reflected that the plaintiff's paycheck was going to be stopped as of March 31, 2010, "so she wouldn't be paid as of April the 1st. But April the 9th was the actual effective date" of termination. Similarly, Buster explained that the plaintiff's pay cut off was effective on March 31, 2010, so "her benefits run[] off of pay period. Her benefits terminated -- would have been 3-31 or possibly they put the 4-1 date in for the benefits."

*i.e.*, her failure to return to work or request additional discretionary leave after her FMLA leave had expired. Furthermore, Sanderson Farms argues, the plaintiff has failed to establish that the proffered reason for her termination was pretextual.

### B.  The Plaintiff's Contentions

The plaintiff contends that she has presented evidence of pretext and/or that an unlawful motive was behind her termination based on the following: (1) the plaintiff notified Sanderson Farms, via a telephone call, on April 8, 2010, that she needed additional leave and that she would not know if she would return to work until April 15; (2) after receiving the fax from Dr. Salinas on April 9, authorizing the plaintiff to return to work that same day, Sanderson Farms did not attempt to communicate with her to ensure that the company was not terminating her based on wrong facts or miscommunications; (3) Sanderson Farms' stated reason for her discharge, *i.e.*, that she failed to return to work on April 9, 2010, was pretextual because: the document reflecting her termination as April 9, had an original date of April 1, but was altered to reflect the later date of April 9; and Veronica Campbell told her that she was terminated on April 1; (4) Sanderson Farms is inconsistent about who made the decision to terminate the plaintiff; and (5) Division Manager Todd Ormon has a negative attitude toward FMLA leave and Sanderson Farms has a pattern and practice of terminating employees for taking FMLA leave.

## IV.  SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56 (c). "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue

of material fact." *Lynch Props., Inc. v. Potomac Ins. Co*., 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322–25 (1986).  Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate.  *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).  The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts.  FED. R. CIV. P. 56(e).  "[T]he substantive law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists."  *Lynch*, 140 F.3d at 625.  "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party."  *Roberson v. Alltel Info. Servs*., 373 F.3d 647, 651 (5th Cir. 2004).  Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251–52).

## V.    ANALYSIS AND DISCUSSION

The Court is of the opinion that Sanderson Farms did not interfere with the plaintiff's rights to obtain leave and the plaintiff has failed to establish that the reason for terminating her, *i.e*., her failure to return to work or request additional leave after her leave had expired, is a

pretext for discrimination and/or retaliation.   Therefore, the Court grants Sanderson Farms' motion for summary judgment in its entirety.

## A.  The FMLA Interference Claim

The Family and Medical Leave Act ("FMLA") requires an employer to grant an eligible employee "a total of 12 workweeks of leave," whether paid or unpaid, when that employee has worked 1,250 hours in the preceding 12 months.  29 U.S.C. § 2612(a)(1).  It is also "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the Act.  29 U.S.C. § 2615(a)(1).

In her complaint, the plaintiff claims that Sanderson Farms "interfered with" her rights under the FMLA.   Sanderson Farms argues that summary judgment should be granted on the interference claim because the plaintiff took all the leave she was entitled to.   The plaintiff, however, does not specifically address the interference claim in her response to the motion.   In fact, in her sur-response, the plaintiff states that this "is not a case in which Plaintiff alleges she was not provided all her FMLA leave; it is a retaliation case."   Therefore, it appears that the plaintiff is not pursuing a claim of interference, *i.e.*, that Sanderson Farms interfered with or prevented her from taking FMLA leave.

Nevertheless, even assuming that the plaintiff is raising an interference claim, the Court finds it unpersuasive.  The plaintiff does not dispute that, under Sanderson Farms' generous policy, she was given more leave than she was entitled to under the law.  Although the plaintiff claims that during her first period of FMLA leave, Richard Warner, her supervisor, harassed her by telling her that she was not following company guidelines requiring her to submit a timely doctor's note to excuse her absence, she acknowledges that Warner made his comments before she actually submitted her FMLA paperwork.   She also admits that once she provided the

required certification, Warner, who was newly hired and was not knowledgeable about the company's guidelines, "backed off."  Regarding the write ups she received from Warner, the plaintiff told him they were "bogus" and refused to sign them.  Moreover, after the plaintiff complained to Division Manager Todd Ormon, he rescinded the write-ups and terminated Warner not too long afterwards.  Notably, the plaintiff's experience with Warner did not deter her from taking a second period of FMLA leave starting in December of 2009.  Therefore, Warner's actions did not interfere with the plaintiff's FMLA rights.

Similarly, the Court is of the opinion that the documents (certifications, status updates, and re-certifications) requested by Sanderson Farms did not amount to harassment or interference but, rather, were proper requests under the law and the company's policy.  *See Harville v. Texas A & M University*, 833 F.Supp.2d 645, 653-654 (S.D.Tex. 2011) (this Court noted that an "employer may require an employee to comply with the employer's usual and customary notice and procedural requirements" when requesting FMLA leave) (citations omitted); *Williams v. Lyondell-Citgo Refining Co. Ltd.*, No. Civ. H–4-2321, 2005 WL 1562422, at *4 (S.D. Tex. July 1, 2005) (this Court found that it was proper for the employer to request medical evidence and check the status of the plaintiff's return), *aff'd*, 247 F. App'x 466 (5th Cir. 2007); *see also Garcia v. Kinder Morgan, Inc*., No. H-07-1082, 2009 WL 1606938, at *6 (S.D.Tex. June 8, 2009).

**B.    The Discrimination and Retaliation Claims**

The Court also grants summary judgment on the plaintiff's discrimination and retaliation claims because she has failed to establish the proffered reason for her termination is a pretext for discrimination and/or retaliation.

The FMLA prohibits discrimination or retaliation against employees who take FMLA leave or engage in protected activity under the Act. *See* 29 U.S.C. § 2615(a)(1)-(2) and (b)(1)-(3) ; *Hunt v. Rapides Healthcare Sys*., LLC, 277 F.3d 757, 768 (5th Cir. 2001); *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 383 (5th Cir. 1998). Similarly, under the Americans With Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA"), it is unlawful for an employer to discriminate and/or retaliate against an employee based on disability or other protected conduct. *See* 42 U.S.C. § 12112; Tex. Lab. Code §§ 21.051; 21.055; *Sanchez v. Dallas/Fort Worth Intern. Airport Bd.*, 438 F. App'x 343, 346 (5th Cir. 2011); *Tabatchnik v. Continental Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008).

Where, as in this case, no direct evidence of discrimination and/or retaliation is offered, courts have applied the three-step burden-shifting analysis established in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). *See Hunt*, 277 F.3d at 768; *Sanchez*, 438 F. App'x at 346; *Tabatchnik*, 262 F. App'x at 675-676. Under this standard, the plaintiff must first establish a *prima facie* case of discrimination and/or retaliation and, if successful, the burden shifts to the employer to provide a legitimate, non-discriminatory/retaliatory reason for the adverse employment action. *See Hunt*, 277 F.3d at 768; *Sanchez*, 438 F. App'x at 346; *Tabatchnik*, 262 F. App'x at 675-676. If the employer meets its burden, the plaintiff must then show that the reason provided was a pretext for discrimination and/or retaliation. *See Hunt*, 277 F.3d at 768; *Sanchez*, 438 F. App'x at 346; *Tabatchnik*, 262 F. App'x at 675-676.

       **1.**       **The Plaintiff's *Prima Facie* Case**.

To establish a *prima facie* case of discrimination under the ADA and TCHRA, the plaintiff must prove that: (1) she suffers from a disability; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) she was replaced by or treated

less favorably than non-disabled employees.  *See Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999).[6]

To show an unlawful retaliation under the ADA, the plaintiff must make a *prima facie* case of: (1) engagement in an activity protected by the ADA; (2) an adverse employment action; and (3) a causal connection between the protected act and the adverse action.  *See Seaman*, 179 F.3d at 301; *Tabatchnik*, 262 F. App'x at 676.

To make a *prima facie* showing of retaliation under the FMLA, the plaintiff must show that: (1) she was protected under the FMLA; (2) she suffered from an adverse employment action; and either (3a) that she was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because she took FMLA leave.  *See Hunt*, 277 F.3d at 768; *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006).

In this case, it appears that Sanderson Farms is challenging the plaintiff's ability to establish a *prima facie* case only with respect to her "witness retaliation" claim, *i.e.*, that the plaintiff was retaliated against because she was a potential witness in Revena Carroll's case against the company.  Regarding that claim, the plaintiff alleges that the "real problems" for her started on December 4, 2009, when the lawyer for Carroll, a former co-worker who had been terminated, sent a letter to Sanderson Farms asserting claims under the FMLA, the TCHRA, and the ADA, and identifying the plaintiff as a witness to Todd Ormon's alleged discriminatory conduct toward Carroll.  According to the plaintiff, in August of 2009, when Ormon received documentation for an extension of Carroll's FMLA leave, he angrily threw the papers at the

---

[6]As the Fifth Circuit has noted, Texas courts "look to analogous federal precedent for guidance when interpreting the [TCHRA]."  Therefore, this Court will "apply the legal standard developed by the federal courts in ADA cases to resolve both . . . TCHRA and . . . ADA claims."  *Bleak v. Providence Health Care Center*, 454 F. App'x 366, 368 (5th Cir. 2011) (citing *Rodriguez v. ConAgra Grocery Prods*. Co., 436 F.3d 468, 473-474 (5th Cir. 2006)).

plaintiff and said, "I don't need this. I'll take care of it myself." The plaintiff claims that she called Carroll and said that Ormon was "pissed." Therefore, the plaintiff claims that Sanderson Farms retaliated against her, in violation of the FMLA, because she witnessed Ormon's discriminatory conduct and/or because the company learned that she might be a witness in Carroll's case against the company.[7]

The Court is of the opinion that the plaintiff has failed to establish any nexus between her potential role as a witness in Carroll's case and the plaintiff's termination. If the plaintiff is referring to observing the alleged discriminatory conduct towards Carroll in August of 2009, that did not prevent her from taking her own FMLA leave several months later in October of 2009 and then in December of 2009. If she is relying on the fact that on December 4, 2009, Sanderson Farms became aware that she was going to be a witness in Carroll's case against the company, as Sanderson Farms notes, the plaintiff has not identified any "real trouble" between December and the expiration of her leave several months later. In fact, even after Sanderson Farms became aware that the plaintiff might be a potential witness, the company, under its generous policy, granted her one extra week of leave beyond what was required by law. Furthermore, when the plaintiff's leave expired, Ormon requested and the company granted her additional discretionary leave through March 18, 2010. Thus, the Court is of the opinion that the plaintiff has not established a *prima facie* case regarding her "witness retaliation claim."

---

[7] The plaintiff's FMLA "witness retaliation" claim is based on 25 U.S.C. § 2615(b)(2)(3) of the Act. Those sections make it "unlawful for any person to discharge or in any other manner discriminate against any individual because such individual" has "given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter"; or "has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter." 25 U.S.C. § 2615(b)(2)(3).

Sanderson Farms, nevertheless, has assumed that the plaintiff can establish a *prima facie* case of discrimination and retaliation with respect to all the other claims.[8]  Sanderson Farms contends, however, that summary judgment is still proper because it has articulated a legitimate, non-discriminatory reason for terminating the plaintiff, namely her failure to return to work or request additional leave.

**2.      Sanderson Farms has provided a legitimate, non-discriminatory/retaliatory reason for the adverse employment action.**

Since it is assumed that the plaintiff has established a *prima facie* case of discrimination and/or retaliation, the burden now shifts to Sanderson Farms to provide a legitimate, non-discriminatory/retaliatory reason for terminating the plaintiff.  *See Hunt*, 277 F.3d at 768; *Sanchez*, 438 F. App'x at 346; *Tabatchnik*, 262 F. App'x at 675-676.  The employer's burden is easily satisfied because it is a burden "of production, not persuasion" and it need not involve a "credibility assessment."  *Reeves v. Sanderson Plumbing Prods, Inc.*, 530 U.S. 133, 142 (2000).

The plaintiff, whose discretionary leave expired on March 18, 2010, acknowledges that on March 30, she received a letter advising her that, "if you have not returned to work or submitted a request for additional leave and provided the required Certification . . . by April 10, 2010, we will assume that you have decided to relinquish your employment" and your "employment will be terminated."[9]  Furthermore, on April 9, 2010, the plaintiff's physician faxed a document to Sanderson Farms clearing her to return to work that day.  It is also undisputed that the plaintiff failed to return to work on April 9, or days later on April 12, 2010.

---

[8]The Court also assumes, *arguendo*, that the plaintiff has established a prima *facie case* with respect to her "witness retaliation" claim under the FMLA.

[9]As Sanderson Farms notes, the cover letter stated that the plaintiff's certification had to be returned by April 10, while the certification itself stated that it had to be returned by April 9, 2010. Sanderson Farms contends that April 9 was the correct date because April 10 was a Saturday.  The plaintiff does not dispute Sanderson Farms' representations.  In any event, the plaintiff's own physician cleared her to return to work on April 9, 2010.

Sanderson Farms terminated the plaintiff on April 13, 2010 for failing to return from FMLA leave or request additional discretionary leave.  Therefore, the Court finds that Sanderson Farms has produced a legitimate, non-discriminatory/retaliatory reason for terminating the plaintiff.  *See Hart v. Comcast of Houston*, LLC, 347 F. App'x 978, 980 (5th Cir. 2009) (failure to return to work after expiration of leave is a legitimate, non-discriminatory reason for termination); *Harville*, 833 F.Supp.2d 645, 653-654 (this Court noted that the plaintiff's failure to, *inter alia*, follow the employer's policy regarding FMLA leave, was a legitimate reason for termination); *see also Haynes v. The Cmty. Hosp. of Brazosport*, No. G-09-271, 2011 WL 43315, at *5-6 (S.D. Tex. Jan. 5, 2011); *Garcia*, 2009 WL 1606938, at *6-8.

### 3. The Plaintiff Has Not Established that Sanderson Farms' Reason is Pretextual.

Having determined that Sanderson Farms has produced a valid, nondiscriminatory/retaliatory reason for terminating the plaintiff, the burden rests squarely on the plaintiff to establish that the reason is a pretext for discrimination and/or retaliation.  *See Hunt*, 277 F.3d at 768; *Sanchez*, 438 F. App'x at 346; *Tabatchnik*, 262 F. App'x at 675-676.  A plaintiff may show that the employer's nondiscriminatory/retaliatory reason was pretextual by producing evidence of disparate treatment or evidence that the proffered explanation is "false" or "unworthy of credence."  *Reeves*, 530 U.S. at 143; *see also Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001) (a plaintiff can "establish pretext either directly, by showing a discriminatory reason motivated management, or indirectly, by showing that the reasons given for management's actions are simply not believable").

The plaintiff claims that Sanderson Farms' reason for terminating her was pretextual "and/or that an unlawful motive" was behind her termination based on a plethora of arguments.

The Court, however, finds the plaintiff's arguments unpersuasive to create an issue of fact regarding pretext and/or that an unlawful motive was behind the decision to terminate her.

According to the plaintiff, she called and left a message for Sanderson Farms on April 8, 2010, advising that she needed additional leave and that she would not know if she would return to work until April 15, 2010, when her gastroenterologist returned from an overseas trip to review her test results.  Besides the plaintiff's own allegations, however, there is no evidence that she called Sanderson Farms on April 8, 2010.  Veronica Campbell denied receiving any messages from the plaintiff and both Campbell and Division Manager Todd Ormon testified that there were no voicemail machines at the Waco plant in 2010.[10]  Nevertheless, even assuming the plaintiff had called on April 8, 2010, that call was insufficient to comply with company policy. As Sanderson Farms notes, its policy requires employees to submit completed certification forms containing sufficient information to enable the company to determine whether requested leave qualifies as FMLA leave, and re-certifications also may be required as permitted by law.  The plaintiff, who was familiar with Sanderson Farms' policy, does not dispute these representations. Importantly, the plaintiff acknowledges that on March 30, 2010, she received a letter from Sanderson Farms advising her that, "if you have not returned to work or submitted a request for additional leave and provided the required Certification . . . by April 10, 2010, we will assume that you have decided to relinquish your employment" and your "employment will be terminated.  Therefore, by simply calling Sanderson Farms, the plaintiff failed to comply with the express directives in the letter and the company's policy.  *See Harville*, 833 F.Supp. 2d at 653-654 (this Court noted that an "employer may require an employee to comply with the

---

[10]In her complaint and during her deposition in 2012, the plaintiff never specified how she left the messages for Campbell.  However, in her declaration from February 20, 2013, after Sanderson Farms had filed the instant motion for summary judgment, the plaintiff claims that she left the messages with a receptionist.

employer's usual and customary notice and procedural requirements" when requesting FMLA leave) (citations omitted).

The plaintiff also asserts that after receiving the fax from Dr. Salinas on April 9, 2010, authorizing her to return to work that same day, Sanderson Farms, *inter alia*, did not attempt to communicate with her to ensure that the company was not terminating her based on wrong facts or miscommunications.  In other words, the plaintiff seems to argue that Sanderson Farms did not comply with its internal policies before terminating her; hence, her termination "was not reasonably informed or considered."   Even assuming the plaintiff's allegations are true, a company's "failure to follow internal procedures is generally not enough to create a genuine issue of fact as to discriminatory motives." *Grubb v. Southwest Airlines*, 296 F. App'x 383, 390 (5th Cir. 2008).  Moreover, it "is not the role of the Court to determine whether Defendants or Plaintiff could have better handled the situation – it is only to determine whether Defendant's decision had a rational justification." *Foster v. Sanderson Farms, Inc*., No. 4:11-CV-17, 2013 WL 177998, at *6 (S.D. Tex. Jan. 16, 2013).  In any event, as noted, the letter that she received on March 30, 2010, made the plaintiff's obligations clear, return to work or use the proper forms to request additional leave, or face termination.  Therefore, it is the plaintiff who failed to follow the procedures that were detailed for her in the letter and Sanderson Farms had no further obligations towards the plaintiff once she failed to return to work or submit a formal request for additional leave as required.[11]

---

[11]The plaintiff asserts that Dr. Salinas sent the document clearing her for work on April 9, 2010, without her knowledge and that she was not informed by Dr. Salinas or the gastroenterologist that she had been cleared to return to work.  Even accepting the plaintiff's assertions as true, they only demonstrate that she was not in touch with her own physician and was not doing her required due diligence in order to comply with Sanderson Farms' policy and the specific directive that she return to work by April 9, or request additional leave with the proper documentation.

Furthermore, the plaintiff contends that Sanderson Farms' stated reason for her discharge, *i.e.*, that she failed to return to work on April 9, 2010, was pretextual because: the document reflecting her termination as April 9, had an original date of April 1, but was altered to reflect the later date of April 9; during a telephone conversation on April 15, Campbell told her that she had been terminated on April 1; and in a Consolidated Omnibus Reconciliation Act (COBRA) form provided to the plaintiff on April 13, the qualifying event listed is "End of employment," and the date given is "4/01/10."  The Court finds those assertions insufficient to create an issue of fact regarding pretext.

In her deposition, Campbell denies ever telling the plaintiff that she was terminated on April 1.  In fact, the "Salaried Payroll Authorization" form signed by Ormon and Campbell on April 13, 2010, indicates that the plaintiff's effective date of termination was April 9, the date that her own doctor said she was expected to return to work.  Although the plaintiff claims that the document was altered to change her termination date from April 1 to April 9, there is no evidence to support that assertion.  Indeed Jennifer Buster and Todd Ormon, both involved in the decision to terminate, denied, under oath, that they ever instructed anyone to alter the document.

Moreover, and significantly, Buster testified that the decision to terminate was made on April 13, 2010, days after the plaintiff failed to return to work.  Similarly, Ormon confirmed that he signed the document of termination on April 13, 2010.  With respect to the COBRA form indicating that the plaintiff's medical coverage would end on April 1, due to end of employment, Veronica Campbell explained that the form merely reflected that the plaintiff's paycheck was going to be stopped as of March 31, 2010, "so she wouldn't be paid as of April the 1st.  But April the 9th was the actual effective date" of termination.  Buster confirmed Campbell's explanation under oath at her deposition.  In essence, besides the plaintiff's allegations, there is

no convincing evidence to contradict Buster's and Ormon's sworn testimony that she was terminated only after she failed to return to work or request additional discretionary leave.

The plaintiff asserts that Sanderson Farms' changing stories about who made the determination to terminate is evidence of pretext.  The plaintiff's argument is without merit.  The Court is of the opinion that a proper reading of the record does not demonstrate any meaningful inconsistency regarding who made the decision to terminate the plaintiff.  Moreover, the salient question is not who terminated the plaintiff but why she was terminated.   In other words, regardless of who made the decision to terminate, the fact remains that the plaintiff was terminated for failure to return to work or request additional leave, a legitimate, non-discriminatory reason that she has failed to controvert.

The plaintiff contends that Division Manager Todd Ormon has a negative attitude toward FMLA leave and Sanderson Farms has a pattern and practice of terminating employees for taking FMLA leave.  The plaintiff's assertions are based on a declaration filed by Revena Carroll in her own case against Sanderson Farms, that is before a different judge.[12]  The plaintiff claims, among other things, that: during Carroll's employment at Sanderson Farms, she became concerned that the company was targeting employees who had taken FMLA leave; when one employee was on intermittent FMLA leave, Ormon said to Carroll, "Can't we just fire her yet?  She's gone more than she's here;" in 2009, Ormon's supervisor instructed Rebecca Morgan, the Field Employee Relations Manager at the Brazos plant, to "terminate the guy that had just filed the FMLA claim;" and Carroll has identified seven other employees who have been subjected to discriminatory treatment for having taken FMLA or medical leave.   The Court finds the plaintiff's arguments unpersuasive.

---

[12]Carroll's declaration is from February of 2012.  The Court also takes judicial notice that the attorney who is representing the plaintiff is the same attorney representing Carroll in her case.

Preliminarily, it should be noted that the Court in Carroll's own case found her declaration, upon which the plaintiff is now relying, to be "replete with impermissible hearsay" and that much of Carroll's evidence contained "unsupported conclusory assertions [and] speculation." *Carroll v. Sanderson Farms, Inc.*, No. H-10-3108, 2012 WL 3866886, at *14-15 (S.D. Tex. Sept. 5, 2012). This Court is also of the opinion that Carroll's declaration suffers from many of the defects mentioned by the Court in her case. Nevertheless, even accepting the allegations in Carroll's declaration, the Court finds them insufficient to raise an issue of fact regarding pretext in this case.

The evidence refutes the plaintiff's assertion that Todd Ormon has a negative attitude toward FMLA leave. Indeed, after the plaintiff's twelve weeks of statutory leave and her additional one week of leave under Sanderson Farms' policy had expired, Ormon requested a discretionary extension of the plaintiff's leave through March 18, 2010. The extension was approved by the company's Executive Committee and allowed the plaintiff to remain on leave and continue to collect her salary through March 18. Faced with that act of good will by Ormon, the plaintiff makes the puzzling argument that Ormon's request on her behalf was "odd" because it did not contain any reasons why the request should be granted and did not specifically request that an extension be granted. The Court finds the plaintiff's assertion to be insignificant because, as she acknowledges, Ormon's request was actually granted and she received the discretionary leave. Similarly, the plaintiff does not dispute that Sanderson Farms' policy is generous, but she asserts that it was not created by Ormon and when employees like her exercise their rights under the policy, it "potentially" costs Ormon money through a diminished bonus. The plaintiff's argument, however, is based on speculation and she has provided no competent evidence to support it.

Similarly, the evidence refutes the plaintiff's claim that Sanderson Farms has a pattern and practice of targeting employees for taking FMLA leave.  Sanderson Farms notes, and the plaintiff does not dispute, that its FMLA policy is more generous than required by law.  For instance, Sanderson Farms' policy affords leave rights to employees after only 90 days of employment, rather than after 12 months as prescribed by law.  Also, the policy allows 13 weeks of leave, rather than the 12 weeks provided by law.  In addition, an employee may apply for discretionary leave even after her 13 weeks have expired.  Indeed, as noted, in this case the plaintiff was granted discretionary leave and continued receiving pay long before after her statutory and company leave had expired.  Sanderson Farms' very generous FMLA policy and its good-will toward the plaintiff are inconsistent with a company engaging in a pattern of discrimination and/or retaliation.  Furthermore, the Court is of the opinion that the plaintiff cannot rely upon the alleged experience of the employees mentioned in Carroll's declaration because they had different job duties and/or worked under different supervisors and time periods.

## VI.    CONCLUSION

Based on the foregoing discussion, the Court finds that Sanderson Farms did not interfere with the plaintiff's rights under the FMLA and, even assuming the plaintiff can establish a *prima facie* case of discrimination and retaliation, the company has provided a legitimate, non-discriminatory reason for terminating her, *i.e.*, her failure to return to work or request additional discretionary leave.  The Court further finds that the plaintiff has failed to establish the proffered reason for her termination is a pretext for discrimination and retaliation and/or that an unlawful

motive was behind the reason to terminate.   Therefore, the Court GRANTS Sanderson Farms'

motion for summary judgment in its entirety.[13]

It is so **ORDERED**.

SIGNED on this 2nd day of May, 2013.

Kenneth M. Hoyt
United States District Judge

---

[13]The plaintiff claims that Sanderson Farms has not addressed his "witness retaliation claim" under the FMLA as well as her retaliation claims under the ADA and TCHRA.  The Court disagrees and finds that Sanderson Farms has addressed all of the plaintiff's claims in its motion for summary judgment and in its reply to the plaintiff's response.